Okay, we'll go ahead. This is the case of Anthony Marrero v. Thomas J. Dart, Sheriff of Cook County and the Sheriff Merit Board, Case 24-1876. We are here to review the decision of the board, checking are the findings of fact against the manifest weight of the evidence? Are the board's findings sufficient to terminate the employee? Also, did he follow the Sheriff's Use of Force Order, being 11-2-1-0, the Desmont Use of Force Model? With that, the appellant may start. Well, I didn't introduce Justice Cynthia Cabb, Justice Nathan House, and myself, James Fitzgerald Smith. Now you may go ahead. Good afternoon, your honors, and thank you. Thank you very much. I'm Assistant State's Attorney W. Clifton Holmes on behalf of the appellant, Cook County Sheriff Thomas J. Dart. I would ask if I could reserve three minutes for rebuttal, please. Sure. Thank you. It may please the court. In this appeal, the Cook County Sheriff's Office asked this court affirm the September 27, 2019 decision of the Sheriff's Merit Board terminating Correctional Officer Anthony Marrero from service. Mr. Marrero used excessive force when he applied 10 or more knee strikes to detainee Lee Brewer, while Mr. Brewer was handcuffed behind his back in an isolation holding cell at Cook County Jail on February 15, 2013. After conducting an evidentiary hearing, the board unanimously concluded that the evidence showed that Marrero used excessive force in that incident and ordered Mr. Marrero's discharge. The circuit court erred when it remanded Mr. Marrero's disciplinary proceeding to the Merit Board on July 6, 2023 to enter a sanction less severe than termination. For my argument today, I will start by addressing the Merit Board's findings that Marrero used excessive force and violated Sheriff's policies governing use of force, and then turn to the board's decision to impose termination as Mr. Marrero's disciplinary sanction. First, Marrero's use of excessive force. The board's finding that Marrero used excessive force was not against the manifest way of the evidence or otherwise clearly erroneous. The board weighed the totality of the circumstances under the Sheriff's order governing the use of force in reaching its excessive force finding. The board found that Mr. Marrero applied 10 or more knee strikes to Mr. Brewer in a 22 second period, and that quote, at least the last quote few of the knee strikes were administered at a point when Brewer was not resisting. I'd like to start by addressing the compelling nature of the video evidence in this case, which is a part of the record before this court. Then I'd like to address witness testimony that relates to video evidence. Mr. Marrero's interactions with Mr. Brewer at the county jail receiving center were captured by jail cameras. What the videos depict is that Mr. Marrero and Mr. Brewer interacted for a total of 58 seconds on the afternoon of February 15 2013 at the jail receiving center. 55 of those 58 seconds are directly captured on video. Video footage captures all 22 seconds when Mr. Marrero applied knee strikes to Mr. Brewer, and it captures 23 of the 26 seconds preceding Marrero's application of knee strikes to Brewer, and all 10 seconds immediately following the knee strike incident are documented on video. Based on the scope of that coverage, video evidence is crucial evidence in this case, and leaves little room for ambiguity or guesswork. What the videos show in order is as follows. Jail receiving camera 2 picks up the first interaction between Officer Marrero and Mr. Brewer. Officer Marrero did not have a pre-assigned role relating to the escort of detainee Brewer on the day in question. The camera 2 footage reflects this. At 3.28 p.m., camera 2 shows that an officer, last name Trevino, escorting Mr. Brewer at the receiving center. After three or four seconds, Mr. Brewer abruptly stops short while he's walking, impeding Officer Trevino's progress. You then see Officer Marrero walk up to Officer Trevino and Mr. Brewer at the 3.28 p.m. and 32-second mark of the video, while a third correctional officer also approaches. The next sequence is captured on camera 4. Three officers, Officer Marrero, Officer Trevino, and a third officer named David Walker, are seen on this video escorting Mr. Brewer for a span of roughly nine seconds in front of a communal holding cell. Mr. Brewer is handcuffed, bent over at the waist, and his head is perpendicular to his body. Cameras 13 and 5 each capture the crucial 45 seconds that include Mr. Marrero's leg strikes and Mr. Brewer. The focal point here when we look at camera 13 is that it's positioned roughly 30 to 35 yards away from the holding cell in which the knee strikes take place. You see that as Officer Marrero begins to apply knee strikes to Mr. Brewer inside holding cell A, four correctional officers crowd around the holding cell within a distance of about 10 yards. Camera 5 shows the knee strikes themselves at an up-close angle in the holding cell. Within seconds of Mr. Marrero moving Mr. Brewer inside the holding cell, Mr. Marrero follows him in and, with the help of Officer Walker, presses Brewer's head against the wall, and the officers use their hands to restrain Mr. Brewer's upper back and neck. We then see Officer Marrero apply 13 knee strikes to Mr. Brewer in the corner of the cell in a 22-second span. We see Officer Marrero winding his leg back in between many of the leg strikes to maximize the impact of the next strike. Almost immediately after Officer Marrero and Officer Walker leave Mr. Brewer in the cell, kneeling with his hands still cuffed behind his back, his head facing forward, we see Mr. Brewer slide off the bench and out of the ground due to his center of gravity carrying him off the bench. Now having addressed what the videos show, here is what none of the videos show. None of the videos I just described show Mr. Marrero to be in any danger from Mr. Brewer at any point in the sequence. Furthermore, none of the videos depict Mr. Brewer ever kicking Mr. Marrero or Officer Walker on camera. The only gap in the video's coverage lasts approximately 3 seconds and occurs between the camera 4 video sequence and the cameras 13 and 5 videos. Turning now to witness testimony, there were significant credibility problems with each of Mr. Marrero's witnesses at the evidentiary hearing. To start with Mr. Marrero himself, he claimed that a threat from Mr. Brewer in the isolation holding cell arose because Brewer, quote, donkey kicked him. It's at seat 735 of the record. He claimed this occurred during a 4-second stretch just before and after the 3.29 p.m. mark of the camera 5 video. Not only does the video not show any donkey kick by Mr. Brewer, it doesn't show Mr. Marrero's body flinch at all during the entire 13-knee strike sequence, such as might suggest that Mr. Brewer did somehow effectuate a backward strike kick at one of the officers. Likewise, Officer Walker, in his testimony, claimed Mr. Brewer made a backward, quote, horse kick in the holding cell. That was at seat 6, page of the record, seat 667. But the lack of any video evidence corroborating either of the officers' claims significantly undermined their credibility. I think perhaps the biggest problem for Mr. Marrero, however, was the credibility of his expert witness, Officer James Klauba. That credibility diminished significantly halfway through his testimony on direct. Officer Klauba testified that, quote, a huge factor in Marrero's course of conduct in applying 13-knee strikes to Mr. Brewer was Marrero's intention to uncuff Mr. Brewer upon leaving Brewer in the holding cell and his need to safely do so. What Officer Klauba was seeking to do was to supply some type of explanation for why Mr. Marrero applied these relentless knee strikes to Mr. Brewer in such a short time span. The problem for Officer Klauba is that when the video was played for him during his direct testimony, it showed that the officers left Mr. Brewer shackled in his handcuffs in the locked isolation holding cell and no uncuffing of Mr. Brewer ever occurred. Officer Klauba also did concede on cross-examination that Mr. Marrero could have taken Mr. Brewer to the ground in the holding cell in lieu of pushing his head against the wall and applying 13-knee strikes. As to the sheriff's witnesses, the sheriff's expert, former Hamilton County, Tennessee, Chief of Corrections James Hart, gave his opinion that Marrero used excessive force in striking Brewer with his knee 13 times in a row. Chief Hart also testified that an alternative available to Marrero was to simply guide Mr. Brewer into the isolation cell, past the cell door, and then shut the door in lieu of the 13-knee strikes. A further point on the findings of fact before I move to the termination issue in the case, Your Honors, as the sheriff has made this point in our briefing, Mr. Marrero has an independent problem in asking that this court reweigh the board's findings of fact because he failed to cross-appeal from the circuit court's upholding of the merit board's adverse finding against him on the use of excessive force, as required under Supreme Court Rule 30383. This operates as a jurisdictional bar to appellee seeking a reweighing of the excessive force finding. Now on turning to the board's decision to oppose termination as Marrero's disciplinary sanction. That is a decision that was entitled to considerable deference under this court's precedent, and the circuit court erred in overturning the decision. To overturn the board's termination decision, this court would have to find that the termination of Mr. Marrero was arbitrary, unreasonable, or unrelated to the requirements of service. The board's termination in this case was plainly neither arbitrary, unreasonable, nor unrelated to the requirements of sheriff's office service. I submit to the court it is a justifiably rare event for this court to substitute its judgment for that of the merit board on questions of termination. That considerable deference to which the board's decision to impose the sanction of termination is entitled, as per this court's case law, including under the Rios case of 2020, that deference does not diminish merely because the board stated in their decision in Mr. Marrero's case that they were making a, quote, close call. The merit board is in the best position to ascertain what effect it would have on morale among the sheriff's office's nearly 7,000 employees to impose a sanction less severe than termination in the instance of use of excessive force. The merit board is also in the best position to ascertain what effect it would have in the office's standing as a public-facing agency to permit personnel to remain in service after committing acts of excessive force against detainees. Mr. Marrero offers a comparator approach in his briefing, Your Honors, or the idea that this court should try to sift through a large handful of ostensibly similar cases and see what disciplines were assigned in those other cases. This approach fails for two reasons. The first is that this comparator approach is precluded under Lowney v. Des Plaines, the Illinois Supreme Court's 1992 decision, where the Supreme Court explained that, quote, cause for dis- You don't have to go into the details of these cases. Just kind of summarize and get on so we can move on. Perfect, Your Honor. Thank you. I will do that. I did just want to further address Mr. Marrero's comparator approach and argument. Your Honors, there are eight merit board decisions that Mr. Marrero attached to his briefing in the circuit court below and before this court. And there are distinguishing factors between those eight cases and the case at bar that mean that even if this court did not apply Lowney's in the fashion I just urged, these cases are distinguishable. The first distinction factor is that Mr. Brewer was handcuffed behind his back during the entire incident with Mr. Marrero in the isolation holding cell. This was noted by the merit board at page seven of their decision. Of the eight comparator cases Marrero proposes, in five of them, the inmate involved in a confrontation with the correctional officer was not handcuffed. In two of the eight cases, it's not clear if the inmate was handcuffed. And in one case, although the inmate was handcuffed, he was cuffed either in his front or on his side from the description of facts given. Whereas Mr. Brewer in the case at bar was handcuffed behind his back, which is the most vulnerable and least threatening position for a detainee. The second distinction factor is involves the ratio of detainees, I should say, of officers to detainees in Marrero's comparator cases. The ratio of Mr. Marrero's case here at bar was six to one, six officers to one detainee. We don't need to hear any more on this. Just sum up so that we can ask questions. Thank you, Your Honor. I will do so. In addition to other distinguishing factors such as the size of the detainees at issue, we submit to the court that we don't have the entire evidentiary record of the other eight cases before us. And uniquely, we don't have the video for many of those other cases before us. And there's a uniqueness to each excessive force case. So I think this court should proceed quite cautiously if and when it ever should attempt to import evidence from other alleged comparator cases. And so those are my arguments, my main points in support of my arguments. Questions? I do have one that's I'm sorry, Justice House. I was just going to go into how much leeway do reviewing courts have to, you know, if we accept that excessive force is used, how much leeway do we have to determine whether or not the proposed sanction is too severe or not severe enough? Your Honor, Justice House, what we know from the Rios case, this court's 2020 decision is that that degree of deference which is entitled to the administrative agency here that the Cook County Sheriff's Merit Board in a termination case is ought to be considerable. So we know that the merit board hears excessive force cases routinely. It has occasion and is required to review video evidence in addition to witness testimony. And it also is the wearer of the credibility of the witnesses and it's had a great difference in that aspect, Your Honor. So for and also, Your Honor, I would note for the court that the case law of this court also dictates that this court ought not substitute its judgment on a particular sanction merely because it views a different sanction to be more appropriate. And we see here, Your Honor, with the greatest respect for the circuit court, the circuit court, we feel, did put the court's thumb on the scale and saying, well, this appears to be a close call, but I'm going to go to the other side. And what the circuit court did was it ordered the merit board to impose a sanction less severe than termination in the form of a suspension of 30 days or greater. So we saw there, Your Honor, what we feel the circuit court ought not have done under the white body of case law, by which it's an exceptionally rare case that this court ever does indulge in setting aside a sanction of discharge in administrative agency case. Judge Cobb? That just kind of your last point kind of led me to my question. So the circuit court remands. Is there something that we should understand procedurally as to why there was not an appeal after the circuit court's first remand in order for a lesser sanction? So, Your Honor, Justice Cobbs, I'm glad you asked that question. In the procedural history of this case, the sheriff's office actually did file a notice of appeal after that first order by His Honor Judge Wilson. It was July of 2023 when His Honor issued that order. And within 30 days, we filed a notice of appeal, Your Honor. What occurred then is this court dismissed the appeal for want of jurisdiction under the final judgment rule. And so based on that, Your Honor, the proceedings went from there. And then we then filed a new notice of appeal after His Honor's later order in August of 2024. Thank you. Any further questions? I have none. Appellee, you may proceed. Your Honor, may I reserve the additional time? You already addressed that. Certainly. Thank you, Your Honor. Good afternoon, Your Honors. My name is Cass Casper. I represent Anthony Marrero, who, for the record, is present and seated to my right in my room today. May it please the court. We are asking this court to affirm the merit board's decision on remand issuing a 90-day suspension. The only question that's before the court, per the briefing, is whether or not the discipline is for just and sufficient cause. The sheriff extensively argued in its oral argument today about the manifest weight standard and the findings of fact. My understanding from the briefing is that that's not an issue up here. We're not considering whether or not the use of force was proper in the first instance. This review is limited to whether or not discipline was for just and sufficient cause. And that's what I'm prepared to address today unless there are arguments or are specific questions about the record below. That being said, it's hard to do the just and sufficient cause analysis without looking at the facts at the hearing a little bit. Because remember, and Justice Cobbs and Justice Howes, your questions go into this, the deferential standard that applies to the manifest weight prong in these cases is greater as to the findings of fact. But the findings of discipline, this court has more latitude to review whether or not discipline is appropriate than it does as to the findings of fact in the first instance. And we know that because the Roman case and the Lopez v. Dar case, they talk about discharge must be based on, quote, substantial misconduct, unquote. That's the standard, substantial misconduct, or put differently. Discharge cannot be unreasonable and arbitrary based on the facts in the record below. In our view, when the board itself says, and I'll quote it, this is a close call under the totality of the circumstances, keeping in mind, and this is the board's findings, keeping in mind Brewer, the detainee, had already assaulted another officer prior to being restrained and was continuing to be uncooperative and failing to follow the directions of the respondent. And he was not passively disengaged from resisting. That's in the board's conclusion paragraph. With those findings, okay, that's the board who heard the witnesses, who reviewed the video, who saw the documentary evidence, who considered the two experts, the board found that Brewer was not being cooperative through this. Brewer had just engaged in a battery on another officer right before Morero gets involved. Furthermore, the only testimony that occurred at the board was that of Officer Walker who was on scene, and Officer Morero who was on scene, and then the two experts. So the only body of evidence at the board about what actually happened at the scene is Officer Walker and Officer Morero. Officer Walker, who has no stake in the outcome of this, he came into the mayor board, and he largely corroborated everything that Morero said, that this detainee had just engaged in assault on another officer, that this detainee was not cooperating with the de-escalation process, this detainee was resisting, this detainee was stiffening his body, and importantly, Walker confirmed that this detainee was engaging in kicking of the officers involved's shins. So the officers who are on scene who testified were consistent that this was an unruly, uncooperative detainee in a less than one minute period where the officers are trying to gain control of him, and the board acknowledged that all the evidence showed that. And let me go back to the issue here today. Is this substantial misconduct that warrants the ultimate sanction, the career-ending sanction, termination, and it won't just bounce Morero from the jail, it'll kill every other job prospect he has in security or policing, this termination. Is this substantial when all the witnesses who were on scene who testified said this detainee was being unruly and uncooperative? When we submit the video, if watched closely, you can see one of the donkey kicks that Morero testified to. You gotta look between 1528-58 and 1529-02. That timestamp, you can see one of these donkey kicks that Morero said. So we got video evidence corroborating it, we got the officers on scene corroborating this behavior, and Morero's trying to do the best he can in flashbang hot circumstances. And by the way, the receiving section of the jail, where there's all kinds of other folks milling around who are bringing their own issues into the jail, he's trying to do the best that he can in that 58-second period. To do so, we submit he followed his training. He applied reasonable knee strikes to a fleshy, muscular area of Brewer's body to try to gain compliance. And the board and Superintendent Queen, who also wasn't there and just had reviewed the video and referred it to OPR, neither one of them, the board or Superintendent Queen, even said that it was inappropriate to use knee strikes. The board didn't find that. Superintendent Queen didn't think that. It was that he used too many in these hot circumstances that may, to all of us now, looking at this after the fact, may seem, well, maybe he shouldn't have used so many. But folks, we're not in the jail where all this is going on, and these officers are trying to do the best they can with an unruly detainee who doesn't want to cooperate, who's not following verbal instructions. And we submit that here, too many knee strikes is not sufficient to be a total career killer. Furthermore, I want to talk about the level of this. Are we addressing what is a total career killer, or are we addressing whether the discipline was reasonable and arbitrary? Where does the total career ending factor come in for the appellate course review? Well, I submit that it's well known that an officer who's terminated from a law enforcement job will never be able to work in the field again. Is that a factor in our analysis? I think that it certainly, respectfully, I think that it should be. Can you cite to a case where it says that is a factor in our analysis? Thank you. Judge, I can't. I can't. And you know what? I'll move. I'll back away from that point. It doesn't sound like the court likes that point. I will back away from that. I hear you loud and clear. But we have to go back to the is this substantial misconduct. Okay. And we submit that misjudging the number of knee strikes in the circumstances that the evidence shows we just described is not the kind of substantial misconduct that should lead to termination. These are very clearly compliance strikes on the video and we submit the board seem to recognize that. Furthermore, I want to switch gears here for a second because the board, when this case was remanded back to the board, the board had authority under the statute to impose a longer suspension, 180 days up to 180 days. It shows 90 days. So even on remand, I think we need to take into consideration that on remand with the benefit of Judge Wilson's remand order, the board looking at this again decided, well, you know, we think 90 days is what should is what should be effectuated here. And the remand order is deserving of deference too, because it's not as if, you know, this court's review should just extend to the original merit board order. No, it should also extend to the board's remand order where they say, we think 90 days is the best outcome here. And actually for this board to go back now and reach back and say, oh, no, it should be termination. Well, what are we to do with the 90 day suspension order that that was issued on remand in that instance? Aren't we substituting our judgment for the board's remand penalty? And again, I connect this to say the board could have issued up to 180 day suspension on remand, but it didn't. And that tells us that the board to some extent must had to have agreed with Judge Wilson that termination, it was too close a call and it issued a lesser penalty. Any further questions? I just, I wanted to address the comparators for one second, if I may. Okay. With that, we just ask that this board affirm the 90 day suspension issued by the board on remand. Thank you very much. Your Honor. Yes, thank you, Justice. Unrebuttal, Your Honors. To address the donkey kick in the portion of the video, opposing counsel suggests a kick could be visible there. As I noted before, there was no click kick visible at that portion of the video frame on our review of that video. But I want to point out again, even assuming arguendo that something occurred during those frames, Mr. Moreno does not flinch one inch. So if there was any physical contact, it didn't cause Mr. Moreno to move even by one inch during those four seconds that Mr. Casper cited in the record. Second, I wanted to point out that what the board concluded here in the end was that Mr. Moreno applied excessive force after a point when the detainee, Mr. Brewer, had stopped resisting. Under the sheriff's order on use of force, Section 7D, quote, use of force as a response to a subject's failure to follow instructions where there is no immediate threat to the safety of the institution, inmates, general public, or staff is authorized only when the officer has attempted non-physical alternatives that are documented, meaning you have to stop and put it in writing. If at that juncture you want to use force, of course, what happened here is, according to the merit board's finding, even after the detainee stopped resisting, the appellee, Mr. Moreno, continued to apply his knee strikes. Now, I want to point out to the court as well that what this court held in Vargas is that where an officer punches a detainee after the detainee stopped resisting, that is subject to the sanction of discharge, upholding the merit board's sanction of discharge in that case. Similarly, the Department of Central Management Services case from the 4th District, two state correctional officers punched a detainee who was shackled, and I think that case is very persuasive because here we have a shackled detainee in an isolation holding cell without any other detainees in that cell. Two last points, Your Honors. I want to address the red herring that Mr. Casper introduced where he asked this court to attach some significance to the merit board's having issued a sanction of 90-day suspension to Mr. Moreno after the merit board received the case on remand from Judge Wilson. It's a red herring for two reasons. The first is because it's apples and peanuts or grapes. It's not even apples and oranges. Within the span of discharges, there is only a discharge, yay or nay. It's binary. Across suspensions, there's a span. There's no such thing as a discharge with prejudice or any way that the merit board, with the order that Judge Wilson had given them, could do anything other than issue the decision effectively under protest, which is what they did. The other point I want to note is that there is a procedural quirk which is noted in the merit board's subsequent decision after the remand by Judge Wilson, which is that Officer Moreno was subject to a separate disciplinary proceeding for which he was suspended for 30 days. As an outgrowth of that proceeding, the parties, meaning the Sheriff's Office and counsel for Mr. Moreno, stipulated that a suspension that Mr. Moreno, a suspension without pay that he had been undergoing from 2016 to 2019 for over three years, that suspension was to be entered in the docket of that 80-72 separate disciplinary proceeding where the 30-day suspension had risen to issue. So Mr. Moreno was already in a posture where he had been suspended for over three years, and so to the extent that the merit board gave any real consideration to what exact level of suspension to assign to Mr. Moreno on remand, clearly they may have been taking into account that additional factor that he'd already served over three years of suspension. So with those points in mind, Your Honors, the Sheriff's Office would like to ask in conclusion that this court reinstate the merit board's decision of September 2019 and affirm the discharge of Anthony Moreno. Thank you. Any questions? And of course, any questions from Your Honors? No questions? I have none, Justice. All right. Thank you both. You made fine presentations. And I agree it is a close case, but it appears, at least from my view, the sheriff has to enforce his rules and he can't just let down. So you have my thought. Anyway, we'll review it and we'll let you know soon. Thank you very much, Justice. Thank you, Justice Smith. Thank you, Your Honors.